# United States Court of Appeals for the Federal Circuit

2009-1008, -1009, -1010, -1034, -1035, -1036, -1037

THERASENSE, INC. (now known as Abbott Diabetes Care, Inc.)
and ABBOTT LABORATORIES,

Plaintiffs-Appellants,

v.

BECTON, DICKINSON AND COMPANY,
and NOVA BIOMEDICAL CORPORATION,

Defendants-Cross Appellants.

Rohit K. Singla, Munger, Tolles & Olson, LLP, of San Francisco, California, argued for plaintiffs-appellants. With him on the brief were Jason A. Rantanen; and Donald W. Ward, of Los Angeles, California.

Bradford J. Badke, Ropes & Gray LLP, of New York, New York, argued for defendants-cross appellants. With him on the brief were Sona De and Gabrielle M. Ciuffreda.

Appealed from: United States District Court for the Northern District of California

Judge William H. Alsup

# United States Court of Appeals for the Federal Circuit

2009-1008, -1009, -1010, -1034, -1035, -1036, -1037

THERASENSE, INC. (now known as Abbott Diabetes Care, Inc.)
and ABBOTT LABORATORIES,

Plaintiffs-Appellants,

v.

BECTON, DICKINSON AND COMPANY,
and NOVA BIOMEDICAL CORPORATION,

Defendants-Cross Appellants.

Appeals from the United States District Court for the Northern District of California in consolidated case nos. 04-CV-2123, 04-CV-3327, and 04-CV-3732, Judge William H. Alsup.

_____

DECIDED:  January 25, 2010
_____

Before LINN, FRIEDMAN, and DYK, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

Abbott Diabetes Care, Inc. and Abbott Laboratories (collectively "Abbott") appeal the final decision of the U.S. District Court for the Northern District of California, which entered judgment in accordance with a jury verdict that claims 11 and 12 of Abbott's U.S. Patent No. 5,628,890 ("the '890 patent") are infringed by Becton, Dickinson & Co. and Nova Biomedical Corp. (collectively "BD/Nova") but are invalid under 35 U.S.C. §§ 102, 103, and 112 ¶ 1, and denied Abbott's post-trial motions for judgment as a matter of law ("JMOL") and for new trial.  <u>Therasense, Inc. v. Becton, Dickinson & Co.</u>, No. 04-CV-2123 (N.D. Cal. Sept. 2, 2008).  Although judgment was entered in favor of

BD/Nova on all counts relating to the '890 patent, BD/Nova cross-appeals the jury's underlying finding that it infringes claims 11 and 12. Because we conclude that the district court did not err in denying Abbott's post-trial motions on invalidity, and because we lack jurisdiction over BD/Nova's cross-appeal, we dismiss the cross-appeal and affirm the judgment.

BACKGROUND

The '890 patent is directed to electrochemical sensors for measuring glucose levels in blood. A droplet of blood is placed on a disposable test strip that has two electrodes: a "working electrode" and a "counter electrode." The working electrode is coated with an enzyme and a mediator. The enzyme serves as a catalyst to facilitate a chemical reaction in which the glucose molecules in the blood sample lose some of their electrons, and the mediator then transfers those electrons to the working electrode. As the electrons flow through the working electrode, an electrical current is detected. The magnitude of the electrical current can then be correlated to the concentration of glucose molecules in the blood. The electrons are then brought back into the blood through the counter electrode. To complete this circuit, the blood must be in contact with both electrodes at the same time.

A problem occurs, however, if the blood only partially covers the working electrode. For example, if too little blood is supplied, or if the test strip is not held in a horizontal position, the blood may not fully cover the working electrode, resulting in the production of fewer free electrons. Because fewer electrons will flow between the two electrodes, the sensor will report an erroneously low glucose level. Based on this false

reading, a patient may fail to take insulin when he should, or the patient may consume carbohydrates when he should not.

The inventors of the '890 patent sought to solve this problem, known in the art as the "short fill" problem, by placing the counter electrode on the <u>downstream</u> side of the working electrode. When the electrodes are arranged in this manner, the blood necessarily makes contact with the working electrode before it makes contact with the counter electrode. This arrangement helps to ensure that a circuit is not completed, and that no measurement is taken, until the working electrode is fully covered with blood.

Claim 11 of the '890 patent is directed to this "downstream" embodiment. It recites, with key term emphasized:

> 11. An electrode strip for use in an electrochemical sensor for measuring a compound in a sample, comprising:
>
> an elongated electrode support defining a sample transfer path for directional flow of the sample from an application point along said electrode support;
>
> a reference or counter electrode in said sample transfer path; and
>
> a covering layer defining an enclosed space over the sample transfer path, the reference or counter electrode and said working electrode, said covering layer having an aperture for receiving sample into said enclosed space;
>
> said aperture spaced away from and upstream of said electrodes in said sample transfer path and <u>said reference or counter electrode spaced downstream of said working electrode in said sample transfer path</u>.

Claim 12 depends from claim 11 and adds a requirement that the counter electrode is spaced downstream of "any portion" of the working electrode.

Abbott accused BD/Nova of infringing claims 11 and 12 of the '890 patent by making, using, and selling a product called BD™ Test Strips.[1] BD/Nova denied infringement and asserted that claims 11 and 12 are invalid under §§ 102, 103, and 112 ¶ 1. More specifically, under §§ 102 and 103, BD/Nova asserted that claims 11 and 12 are anticipated or rendered obvious in light of two prior art references: U.S. Patent No. 5,120,420 ("Nankai") and U.S. Patent No. 5,582,697 ("Ikeda").

Following briefing and a <u>Markman</u> hearing, the district court construed the contested terms in the asserted claims as follows: (1) "sample transfer path" means "the route along which the sample moves"; (2) "directional flow" means "the orientation and guidance in a particular direction"; (3) "defining a sample transfer path for directional flow" means "providing a channel for the sample to move in a particular direction from the application point to and including the electrodes"; and (4) "aperture" means "an opening." J.A. 5908-09.

A jury trial was held from July 15, 2008 to August 8, 2008. The jury, using a special verdict form, found that BD/Nova infringed claims 11 and 12 under the doctrine of equivalents, noting in particular that the "aperture" and "electrode support" limitations were present in BD™ Test Strips as equivalents. The jury also found that claims 11 and 12 were invalid. More specifically, the jury checked "Yes" in response to the question, "Have defendants proven by clear and convincing evidence that Claims 11 and 12 of the '890 patent are invalid by reason of anticipation or obviousness?" The jury also

---

[1] Abbott also accused BD/Nova of infringing U.S. Patents No. 5,820,551, No. 6,143,164, and No. 6,592,745. Those patents were found either invalid, unenforceable, or not infringed. After entry of judgment, Abbott appealed, and that judgment is the subject of a separate appeal in <u>Therasense, Inc. v. Becton, Dickinson & Co.</u>, Nos. 2008-1511, -1512, -1513, -1514, -1595 (Fed. Cir. Jan. 25, 2010).

checked "Yes" in response to the question, "Have defendants proven by clear and convincing evidence that Claims 11 and 12 of the '890 patent are invalid by reason of inadequate written description?" In accordance with this verdict, the district court entered judgment in favor of BD/Nova and against Abbott on all counts relating to the '890 patent. On September 2, 2008, the district court denied Abbott's post-trial motions for JMOL and for new trial.

Abbott appeals the judgment that claims 11 and 12 are invalid. BD/Nova filed a cross-appeal with regard to the jury's finding that BD™ Test Strips infringe claims 11 and 12. BD/Nova subsequently moved this court to treat its argument in support of its cross-appeal as an alternative argument in support of affirmance. We have jurisdiction over Abbott's appeal under 28 U.S.C. § 1295(a)(1) (2006).

DISCUSSION

I. Abbott's Appeal

Abbott challenges the district court's denial of its motions for JMOL and for new trial. "This court reviews the denial of a motion for JMOL or a new trial under the law of the regional circuit where the district court sits . . . ." Voda v. Cordis Corp., 536 F.3d 1311, 1318 (Fed. Cir. 2008). The Ninth Circuit reviews a district court's denial of a motion for JMOL de novo and the denial of a motion for new trial for abuse of discretion. In re First Alliance Mortg. Co., 471 F.3d 977, 991 (9th Cir. 2006). "JMOL should be granted only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) (internal quotations omitted). "A new trial is proper only if the verdict is contrary to the clear weight of the evidence, or is

based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." Id. (internal quotations omitted).

In contesting the district court's denial of its post-trial motions, Abbott seeks to overturn the jury's two verdicts of "anticipation or obviousness" and "inadequate written description."

## A. "Anticipation or Obviousness"

The jury answered "Yes" to the question, "Have defendants proven by clear and convincing evidence that Claims 11 and 12 of the '890 patent are invalid by reason of anticipation or obviousness?" Abbott contends that this verdict is a general verdict encompassing separate legal theories of anticipation and obviousness, and that the verdict must be reversed, or a new trial granted, if any legal theory is legally flawed or is unsupported by substantial evidence. In particular, Abbott believes that the district court's jury instruction on the law of anticipation was erroneous, and that the jury could not have found the claims obvious under either of BD/Nova's two obviousness contentions.

"A jury verdict will be set aside, based on erroneous jury instructions, if the movant can establish that 'those instructions were legally erroneous,' and that 'the errors had prejudicial effect.'" Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1363 (Fed. Cir. 2004) (quoting Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000)).

## 1. Legal Error

"The question of whether a jury instruction on an issue of patent law is erroneous is a matter of Federal Circuit law and is reviewed de novo." Id. "In reviewing jury

instructions, the full trial record and the jury instructions in their entirety must be examined because 'instructions take on meaning from the context of what happened at trial, including how the parties tried the case and their arguments to the jury.'" Id. (quoting Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1522 (Fed. Cir. 1995) (en banc), rev'd on other grounds, 520 U.S. 17 (1997)).

The district court instructed the jury on the law of anticipation as follows:

> For anticipation, it is not enough that all of the elements could have been found among two or more references. If, at the time of the patent application, a single prior-art reference already described all of the elements of the claimed invention and would have informed those skilled in the art that those elements could have been arranged as in the claimed invention, then the prior-art reference is deemed to "anticipate" the claimed invention and thereby render it unpatentable and thus invalid. It would not be enough, however, that all of the elements were in random passages in the reference. By the same token, for anticipation to apply, it is not necessary that the prior-art reference expressly lay out the elements in the exact way laid out in the claim. Rather, for anticipation, it is sufficient if the single reference would have informed those skilled in the art that all of the claimed elements could have been arranged as in the claimed invention.

J.A. 5912 (emphases added).

The district court then instructed the jury on how it should apply the law of anticipation to the prior art Nankai reference:

> For anticipation to apply, Nankai did not have to discuss the subject of shortfill. Rather, what matters is whether or not Nankai's specification and figures would have informed those of ordinary skill in the art that the claimed combination could have been arranged as in the claimed invention in suit. If Nankai did not do so, then it did not anticipate. If Nankai did so, then it did anticipate. It would not matter that it was subsequently discovered that the arrangement in question was also useful in solving the shortfill problem. What is already in the public domain does not become patentable merely because a new use for a known approach is discovered.

J.A. 5912 (emphasis added).

Over Abbott's objection, these instructions were read to the jury and a copy was made available in the jury room. After three days of deliberation, the jury sent a note to the trial judge requesting clarification on the law of anticipation. The note read:

> In deciding whether anticipation applies, do we have to show that it was highly probable that a person (of ordinary skill) <u>WOULD</u> arrive at the 890 combination? <u>OR</u> do we have to show it was highly probable that they <u>COULD</u> come up with the 890 combination?

J.A. 10394-95. The district court declined to expand on its instruction and, instead, re-read to the jury its instruction on the law of anticipation. An hour later, the jury reached its verdict of invalidity.

On appeal, Abbott argues, as it did below, that anticipation requires a single prior art reference to disclose exactly the same claim elements in exactly the same way as they are arranged in the claim. Abbott therefore takes issue with the district court's instruction that "it is not necessary that the prior-art reference expressly lay out the elements in the exact way laid out in the claim." In response, BD/Nova focuses on the word "expressly" in this sentence and argues that the instruction is correct because a prior art reference may disclose each claim element either expressly or inherently. But the instruction does not go on to explain the concept of inherency. Instead, immediately following the sentence discussing what is "not necessary" for anticipation, the instruction states: "Rather, for anticipation, it is <u>sufficient</u> if the single reference would have informed those skilled in the art that all of the claimed elements <u>could have been arranged</u> as in the claimed invention." J.A. 5912 (emphases added). We agree with Abbott, therefore, that when read in its entirety, the instruction is incorrect because it makes sufficient, for purposes of anticipation, a prior art disclosure of individual claim

elements that "could have been arranged" in a way that is not itself described or depicted in the anticipatory reference.

The way in which the elements are arranged or combined in the claim must itself be disclosed, either expressly or inherently, in an anticipatory reference. "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." Connell v. Sears, Roebuck & Co., 722 F.2d 1542, 1548 (Fed. Cir. 1983). The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be "treated . . . as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning." Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1459 (Fed. Cir. 1984). "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008) (emphasis added).

The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim. "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation . . . ." Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1373 (Fed. Cir. 2002). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of

circumstances is not sufficient." Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir. 1991) (quoting In re Oelrich, 666 F.2d 578, 581 (CCPA 1981)); see also Trintec Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." (quoting In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999))). For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.

Because the district court's instruction on the law of anticipation was legally erroneous, we must next determine whether the error may have prejudiced the jury's verdict of "anticipation or obviousness."

### 2. Prejudicial Effect

"When the error in a jury instruction 'could not have changed the result, the erroneous instruction is harmless'" and will be upheld. Sulzer, 358 F.3d at 1364 (quoting Environ Prods., Inc. v. Furon Co., 215 F.3d 1261, 1266-67 (Fed. Cir. 2000)); Weinar v. Rollform Inc., 744 F.2d 797, 808 (Fed. Cir. 1984) ("Where the procedural error was 'harmless,' i.e., where the evidence in support of the verdict was so overwhelming that the same verdict would necessarily be reached absent the error, or the error was cured by an instruction, a new trial would be mere waste and affirmance of the judgment is required.").

The only "result" that may have been prejudiced in this case was the jury's affirmative response to the question, "Have defendants proven by clear and convincing

evidence that Claims 11 and 12 of the '890 patent are invalid by reason of anticipation or obviousness?" Because anticipation and obviousness were presented together in the same jury question, it is impossible for us to know which of the two legal theories the jury relied on to invalidate the claims. However, an erroneous instruction on the law of anticipation could not have changed the result in this case if claims 11 and 12 would have been obvious as a matter of law, such that no reasonable jury could have returned a verdict that the claims are not obvious. Cf. Agrizap, Inc. v. Woodstream Corp., 520 F.3d 1337, 1342, 1344 (Fed. Cir. 2008) (holding claims obvious as a matter of law where patentee was "fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" (citing Fed. R. Civ. P. 50(a))). For the reasons that follow, we conclude that the same verdict of "anticipation or obviousness" would necessarily be reached absent the error, because claims 11 and 12 would have been obvious over the Nankai reference as a matter of law.

As a preliminary matter, Abbott argues that BD/Nova's theory of obviousness, in which Nankai was asserted alone as a single reference, was not properly before the jury. According to Abbott, this particular contention was not identified prior to trial and was not raised until after the close of all non-damages evidence, and thus Abbott did not have the opportunity to be fully heard on this issue. In Abbott's view, BD/Nova relied exclusively on Nankai in combination with Ikeda.

Abbott is incorrect. In its Final Invalidity Contentions submitted prior to trial, BD/Nova asserted in separate paragraphs that Nankai and Ikeda each "renders the asserted claims of the '890 patent invalid under §§ 102 and 103," and provided separate

claim charts for the two references showing where each claim element is disclosed in that reference. J.A. 13100-02 (Nankai claim chart), 13114-17 (Ikeda claim chart). At least with regard to independent claim 11, the claim chart of Nankai did not cite to or rely on any additional reference, and Abbott does not separately argue the patentability of dependent claim 12 on appeal. In the parties' Joint Pretrial Order, BD/Nova's second affirmative defense states: "the '890 patent is anticipated or rendered obvious in light of U.S. Patent No. 5,120,420 to Nankai et al. and/or U.S. Patent No. 5,582,697 to Ikeda et al." J.A. 13486 (emphasis added). These were the only two prior art references being asserted against the claims. In the jury instruction pertaining to obviousness, the district court specifically instructed the jury to consider "whether the Nankai reference standing alone or in combination with other prior art rendered the claimed invention obvious as of the date of invention." J.A. 5915 (emphasis added). Finally, in overruling Abbott's objection to the inclusion of this contention in the jury instruction, the district court remarked that "I've seen the way the lawyers tried this case, and there could be no possible prejudice . . . because Nankai has been beaten to death in this case by both sides." J.A. 9820-21 (1859:24-1860:2). Having reviewed the record, we agree with the district court that Abbott received adequate notice of this obviousness contention prior to trial and that the contention was squarely presented to the jury.

Because we conclude that Abbott was fully heard on the issue of whether Nankai alone renders the claims obvious, we must next determine whether the evidence was sufficient for the jury to have possibly found in Abbott's favor.

Figure 12 of Nankai, reproduced below, shows an exploded view of a sensor in which fluid is introduced through introducing port **10** and is rapidly drawn along three

channels **8** towards discharge ports **11**, **12**, **13**, from which air is discharged out of the channels. While following the paths of the three channels, the fluid encounters three separate working electrodes **41**, **42**, **43** and a counter electrode **5** that is shared by all three working electrodes. As shown below, counter electrode **5** is on the downstream side of working electrodes **41**, **42**, **43** relative to introducing port **10**:



FIG. 12

Abbott does not dispute that Figure 12 of Nankai shows all but two elements of the asserted claims: "directional flow" and "said covering layer having an aperture for receiving sample." As for "directional flow," because it is difficult to know beforehand which of the three channels **8** the fluid will fill up first, Abbott contends that the fluid does not move in a "particular direction" as required by the district court's construction of "directional flow." In Abbott's view, if the fluid fills the rightmost channel first, then the counter electrode will be upstream, not downstream, of working electrodes **41** and **42**; alternatively, if the fluid fills the middle channel first, then the counter electrode will be upstream, not downstream, of working electrodes **41** and **43**.

2009-1008, -1009, -1010,
-1034, -1035, -1036, -1037                    13

But Abbott's argument goes to the scope of its claims, not the content of the prior art. The claims require only that a single counter electrode be spaced downstream of a single working electrode: "<u>said</u> reference or counter electrode spaced downstream of <u>said</u> working electrode." While the open-ended transitional phrase "comprising" allows for additional working electrodes to be present in the claimed invention, it is sufficient for purposes of the "downstream" limitation if the counter electrode is located downstream of only a single, "said," working electrode. Hence, if the fluid fills the rightmost channel first, then the "downstream" limitation is satisfied because counter electrode **5** is located downstream of working electrode **43**. The same is true if the fluid fills the middle channel first, since counter electrode **5** would then be located downstream of working electrode **42**. Thus, regardless of which channel the fluid fills up first in Nankai, the fluid will necessarily encounter at least one working electrode before reaching the counter electrode. In addition, as part of the claim construction that was submitted to the jury, which Abbott does not challenge, the district court made clear that "a channel could have a right-angle turn or curved turn and that would still be directional." J.A. 5909. Moreover, "directional flow" is measured "from the application point to and including the electrodes." J.A. 5909. As applied to Nankai, "directional flow" occurs along a particular direction within a given channel, beginning at the introducing port **10** and ending at the channel's respective discharge port **11**, **12**, or **13**, and will necessarily encounter the channel's respective electrode **41**, **42**, or **43** along the way. There can be no dispute that "directional flow" is present.

The second disputed limitation—"said covering layer having an aperture for receiving sample"—is allegedly absent from Nankai because, in Abbott's view, the

introducing port **10** of Figure 12 is located on the side of the sensor rather than in the cover **9**. Abbott notes that the cover **9** only contains discharge ports **11**, **12**, **13**, from which air is drawn out of the channels, not where fluid is introduced. However, Abbott overlooks the fact that an aperture-in-cover arrangement is disclosed in Nankai itself, for example in Figure 13, which shows an introducing port **10** and discharge ports **11**, **12** located in the same cover **9**, with the introducing port spaced upstream of both the discharge ports and the electrodes below. Nankai states that "in the examples, the same numbering is used for common elements." Nankai col.4 ll.38-39. This statement provides an express teaching to look to other drawings in Nankai for common elements having the same number, such as the two covers (numbered "**9**") in Figures 12 and 13. Nankai also teaches, in reference to all disclosed embodiments, that "[t]he discharge port may be used as the introducing port and the introducing port may be used as the discharge port." Id. col.12 ll.28-31. This too provides an unambiguous teaching that introducing ports and discharge ports are interchangeable, such that fluid may be introduced through the ports in the cover rather than on the side. Indeed, Abbott itself concedes that moving an aperture on the cover is an "insubstantial" or "obvious" difference. Reply Br. of Pls.-Appellants 11 ("Although everyone agrees that moving the aperture is an insubstantial difference, it is enough to defeat anticipation."); id. 31 ("[T]here is no dispute that moving the aperture was obvious; both experts agreed that it was an insubstantial difference.").

Abbott's final argument against a verdict of obviousness is that the claimed invention solved the so-called "short fill" problem, a problem for which Abbott submits there was a long-felt but unsolved need, but one which Nankai does not solve. We

accept, as we must, Abbott's contention that short-fill occurs in Nankai if only two channels are filled with blood and if no current is detected in the third channel. Under such conditions, the sensor of Nankai would report an erroneously low glucose level when it averages all three current measurements. But again, Abbott overlooks the fact that the claims are not limited to sensors that prevent short-fill. The relevant claim limitation recites: "said reference or counter electrode spaced downstream of said working electrode." Abbott does not dispute that the fluid in Nankai's Figure 12 will reach at least one working electrode **41**, **42**, or **43** before it reaches counter electrode **5**, regardless of which channel the fluid fills up first. Thus, Nankai's counter electrode is "downstream" of at least one working electrode. Because the claims are broad enough to cover devices that either do or do not solve the "short fill" problem, Abbott's objective evidence of non-obviousness fails because it is not "commensurate in scope with the claims which the evidence is offered to support." In re Grasselli, 713 F.2d 731, 743 (Fed. Cir. 1983); see also In re Kubin, 561 F.3d 1351, 1356 (Fed. Cir. 2009) ("[T]he obviousness inquiry requires this court to review the Board's decision that the claimed sequence, not appellants' unclaimed cloning technique, is obvious in light of the abundant prior art." (emphases added)).

For the foregoing reasons, we conclude that the asserted claims would have been obvious over Nankai as a matter of law. Because the jury could not have returned a different verdict, the district court's erroneous instruction on the law of anticipation could not have changed the result. Similarly, because the jury must at least have found the claims obvious, we need not decide whether mere "substantial evidence" supports the alternative legal theory of anticipation, which is mere evidence that might support a

verdict of anticipation. See Syufy Enter. v. Am. Multicinema, Inc., 793 F.2d 990, 1001 (9th Cir. 1986) (stating the general rule that a new trial is required where the jury reaches a general verdict encompassing alternative legal theories, one of which is unsupported by "substantial evidence"); see also Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (emphasis added)). Nor is a remand required on the alternative factual basis asserted in support of the legal theory of obviousness (namely, Nankai in combination with Ikeda), where, as here, the legal conclusion of obviousness is compelled on at least one asserted factual basis (namely, Nankai alone). See McCord v. Maguire, 873 F.2d 1271, 1273-74 (9th Cir. 1989) ("When a general verdict may have rested on factual allegations unsupported by substantial evidence, we will uphold the verdict if the evidence is sufficient with respect to any of the allegations.").

\*     \*     \*

In sum, we hold that claims 11 and 12 would have been obvious over Nankai as a matter of law. The erroneous jury instruction on the law of anticipation could not have changed the verdict of "anticipation or obviousness," and obviousness based on Nankai alone is sufficient to support that verdict as a matter of law.

### B. "Inadequate Written Description"

The jury returned a verdict that claims 11 and 12 are invalid based on "inadequate written description" independently of its verdict of "anticipation or obviousness." Having affirmed the judgment under the latter, we need not reach Abbott's challenge to the former.

## II. BD/Nova's Cross-Appeal

Despite the fact that judgment was entered in favor of BD/Nova on all counts relating to the '890 patent, BD/Nova filed a cross-appeal against the jury's finding that the accused product satisfies the "aperture" limitation under the doctrine of equivalents.

As our decision in <u>Bailey v. Dart Container Corp. of Michigan</u>, 292 F.3d 1360 (Fed. Cir. 2002), makes clear, "[i]t is only necessary and appropriate to file a cross-appeal when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment." <u>Id.</u> at 1362. Thus, a cross-appeal is proper only when "acceptance of the argument it wishes to advance would result in a reversal or modification of the judgment rather than an affirmance." <u>Id.</u> "Where, as here, the district court has entered a judgment of invalidity as to all of the asserted claims, there is no basis for a cross-appeal as to either (1) additional claims for invalidity or (2) <u>claims of non-infringement</u>." <u>TypeRight Keyboard Corp. v. Microsoft Corp.</u>, 374 F.3d 1151, 1157 (Fed. Cir. 2004) (emphasis added). BD/Nova's cross-appeal falls squarely within this second category.

Accordingly, we dismiss the cross-appeal and strike the surreply brief. Because of concerns that its cross-appeal was improper, BD/Nova filed a motion to treat its argument in support of its cross-appeal as an alternative argument in support of affirmance. Having affirmed the judgment of invalidity on the merits, we decline to reach the alternative argument of non-infringement.

CONCLUSION

We lack jurisdiction over BD/Nova's cross-appeal. The judgment that claims 11 and 12 of the '890 patent are invalid is

AFFIRMED.

COSTS

Each party shall bear its own costs.